The next case this morning is 5 220050 people versus George Lacey arguing for the defendant. Appellant is Christopher Seeloff, arguing for the state is Michael Lennox. Each side will have 10 minutes for the argument. The appellant will also have five minutes for rebuttal. Please. Not only the clerk is permitted to record these proceedings. Good morning. Morning, Your Honor. We read your briefs. You're ready to proceed with argument, Mr Seeloff. Yes, Your Honor. You may proceed. Your Honor's counsel may please court. My name is Chris Seeloff, and I represent the defendant appellant in this case, Mr George Lacey. Mr Lacey was charged with first degree murder, home invasion, armed robbery and unlawful possession of a weapon by a felon. However, Mr Lacey was only convicted on the murder and weapons charges, with the jury remaining hung on the home invasion and armed robbery charges. A defense counsel moved to sever the weapons charge from the remaining charges is more likely than not that he would have been acquitted of the murder charge because well settled case law dictates that emotion to sever the weapons charge would have been granted. There was no competence trial strategy and not severing the weapons charge and severing the weapons charge likely would have resulted in acquittal on the murder charge. Mr Lacey's trial counsel was ineffective. Accordingly, this court should vacate his convictions and remand his cause for a new trial. The state does not contest that unduly prejudicial charges should be severed, nor doesn't contest that the circuit court likely would have motion. Thus, the well settled precedent of our Supreme Court and people versus Edwards is not an issue. Rather, mistake plans. The trial counsel's performance was not deficient because he attempted a quote all or nothing trial strategy, attempting to get an acquittal on charges at a single trial. However, this argument against efficient performance fails for two reasons. First is well settled that severance of the weapons charge in this case would have been granted specifically because of its tendency to prejudice the jury against Mr Lacey on the remaining charges. As the Supreme Court in Edwards noted, the joinder of unlawful possession of a weapon by a felon charges with other felonies quote creates such a strong possibility that the defendant will be prejudiced in his defense of the other charges that it is an abuse of the trial court's discretion to deny a severance. Thus, as a matter of well settled case law, severance of the weapons charge in this case would have been granted had counsel simply asked for the court to do so. Second, there is no evidence in the record and the state does not to any in its briefing that an alleged all or nothing trial strategy was sound in this case. State relies on the notion that defense counsel may have been trying to shoot the moon by getting acquittals on all charges in one trial, thereby preventing the state from curing any evidentiary deficiencies in the second trial. However, the state does not state what evidentiary deficiencies would have been cured, and none are apparent on the face of the record. State also attempts to argue that defense counsel may have been trying for an acquittal on all charges in a single trial quote thinking that the impact of the additional conviction would not be significant unquote. Again, there is nothing in the record or the state's response brief to support what it could mean by this statement. That being said, where the impact of the additional conviction in this case is a 45 year sentence to the Department of Corrections, it's clear that even if defense counsel was engaging in some sort of all or nothing trial strategy that directly contradicts Supreme Court precedent on the matter, such a strategy was unsound based on the catastrophic and easily predictable result of that strategy. State also attempts to argue that any motion to sever would have been irrelevant because Mr. Lacey's prior felony convictions could have been brought in as impeachment evidence. However, the cases relied on by the state, Fields and Gapsky, only support such a contention if it is obvious that the defendant intends to testify. There's no evidence in this case that Mr. Lacey intended to testify, and the fact of the matter is that he didn't testify. This argument by the state is purely academic and does not in any way indemnify counsel from his failure to simply sever the charges, which would almost certainly have been granted as a matter of law. Thus, the only real contention in this case is whether Mr. Lacey suffered prejudice from defense counsel's failure to sever the charges. Here, the state raises two points, both of which are demonstrably false as evidenced by the record. The state claims that, one, there is no evidence to suggest that the jury was improperly influenced by the knowledge of Mr. Lacey's prior felony conviction, and two, that there is strong evidence to support the jury's guilty verdict on the murder charge. As to the suggestion that the jury was not influenced by the knowledge of Mr. Lacey's prior conviction, the only way this court could believe such a statement is if it, like the state on appeal, does not even recognize, let alone analyze, the well-settled case law that prior felony convictions are generally prohibited specifically because of their tendency to unduly prejudice a jury. As the state does not discuss this portion of Mr. Lacey's opening brief, it can be useful. State also fails to engage in any way with jury's questions to the court during deliberations. After several hours on the first day of deliberations, the jury was deadlocked 10 to 2 on whether Mr. Lacey was even present at the scene of the crime, let alone for anything that occurred there. 30 minutes into the second day of deliberations, the jury asked to hear specific information about the unrelated prior felony charge that was the basis for the weapons charge in this case. After being told that they had received all the evidence in the case, the jury took another three hours before returning its verdict. As argued in the opening brief, the jury was deadlocked for hours and was only able to resolve the differences after being told that they would not receive any further information about Mr. Lacey's unrelated prior felony. It is obvious, both as a matter of common sense and our Supreme Court's decision in People vs. Wilmington, that several hours of a jury being hung on some charges and deadlocked on others makes the evidence closely balanced and any mistake, such as the admission of an unrelated prior felony, improperly influences their verdict. The jury's request for specific information about Mr. Lacey's prior felony is compelling evidence that this improper propensity evidence, which again would have easily been prohibited at trial through a motion to sever, is what broke the log jam and resulted in Mr. Lacey's murder conviction. As for the strong evidence that the state claims supports the murder conviction, a closer look reveals it to be far more anemic than the state suggests. The only eyewitness to the case, who stated repeatedly that she never saw the men who broke into the apartment. She also stated that the victim had been robbed on four occasions before the murder, and one of those involved a home invasion. There is also the fact that Woods, the victim in this case, would usually go out of the apartment to purchase fentanyl, quote, but on rare occasions it was a select two people that would come to us, unquote. Thus, Swearingen never saw who did this, admitted that robbery was a semi-regular part of her and Woods' life, and there were drug dealers who knew the location of the apartment and could just as easily have been the two people who broke in and killed Woods. Adisa Smith was the state's star witness, and so much as a repeat liar who admits to being untruthful can be said to be a star. A more detailed breakdown of Smith's lies, omissions, and half-truths can be found in Mr. Lacey's opening and reply briefs. Suffice it to say here that Smith's testimony was anything but credible. Furthermore, when discussing Smith's testimony, the state does not deny or even mention the fact that he openly admitted on the witness stand that he, quote, lied a lot, unquote, to police. Defense counsel walked Smith through his lies and omissions, as well as whether Smith even accurately remembered anything that took place on that night. Perhaps most damning of all to Smith's credibility was his omission that not only was he getting a break from the state in exchange for his testimony, but that this was, quote, one heck of a deal, unquote. Each of the state's arguments against ineffective assistance of counsel are purely abstract and do not rely on the facts of the case as they come to this court. For the sake of clarity and to cement what this case is actually about, I'll conclude by reiterating what is actually at issue here. First, was counsel's performance deficient for failing to sever the weapons charge from the remaining charges? The answer is unequivocally yes, as well settled that a motion to sever would have been granted had he simply filed one. Was there any trial strategy in trying to shoot the moon and go for a, quote, all or nothing, unquote, approach? No, because there is no indication that the jury would have somehow found this guilty. Even if there was a trial strategy in failing to sever, was it sound? Absolutely not, because what reasonably effective attorney could think that allowing the state to effectively stipulate that Mr. Lacey was previously convicted of a felony would be beneficial at trial? Counsel's performance was deficient, both as a matter of law and based on the facts of this appeal. But was there really any prejudice? Is there any evidence that the jury actually considered this unrelated prior felony in convicting him of murder? Yes, as clearly demonstrated by the jury's questions during deliberation, asking to know the exact nature of the unrelated prior felony. State never acknowledges that this question even exists, but is there in the court record for this court to recognize. But what about the evidence? Wasn't it strong enough to convict Mr. Lacey? It was not. The state's star witness was incredible and inconsistent, and admitted that he was receiving one heck of a deal in exchange for his testimony. Furthermore, the only person who actually saw what night admitted that she never saw the faces of the people who broke in and tacitly admitted that the apartment had been robbed before and there were others who not only knew the apartment's location, but also could have good reason to rob Mr. Woods. State's case at trial functionally rested on the admission of Mr. Lacey's prior felony conviction, and counsel's failure to sever the weapons charge served as a panacea for any doubts in the jury's mind. Because the motion to sever would have cured these failures and likely not resulted in Mr. Lacey being convicted of murder, this court should vacate his convictions and remand his cause for new and separate trials. With my remaining time, I'm happy to answer any questions your honors may have. Thank you, Mr. Seeloff. Questions, Justice Welch? No questions. Justice Cates? No questions. All right, thank you. Michael Lennox, you ready to proceed? Yes, your honor. You may do so. Good morning, Attorney Seeloff, your honors, and may it please the court. My name is Michael Lennox, and I represent the state in this matter. This court should affirm the defendant's first degree murder and unlawful possession of a firearm by a felon convictions. Because defense counsel at trial was not ineffective when he utilized an all or nothing trial strategy by not severing the cases. And alternatively, if this court finds that trial counsel strategy was unreasonable and unsound, then the error was not prejudicial because the jury  in the past, not what the crime itself was, and the evidence was overwhelming. To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness, as measured by reference to prevailing professional norms, and that the substandard representation so prejudiced the defendant as to deny him a fair trial. However, counsel's strategic choices are virtually unchallengeable. Effective assistance of counsel refers to competent, not perfect representation. Therefore, there is a strong presumption that counsel's performance fell within a wide range of reasonable professional assistance, and great deference is given to an attorney's decisions. As there is that strong presumption that an attorney has acted adequately, a defendant must overcome the strong presumption that the challenged action or inaction, quote, might have been the product of sound trial strategy. And generally, a defense counsel's decision not to seek a severance, although it may prove unwise in hindsight, is regarded as a matter of trial strategy. Further, a major disadvantage of a severance is that it gives the state two bites at the apple, where an evidentiary deficiency in the first case can perhaps be cured in the second. In reference to the first element of the Strickland analysis, this unreasonable assistance, it is well settled, it is a well settled premise, that the that defense counsel may choose to pursue an all or nothing trial strategy, when faced with the possibility of seeking a severance. And the mere fact, quoting people versus Walton in the first district appellate court, the mere fact that an all or nothing strategy proved unsuccessful does not mean counsel performed unreasonably and rendered ineffective assistance. This case is similar to people versus fields. The court rejected the defendant's claim of ineffective assistance of counsel based on counsel's failure to file a motion to sever. In fields, there was evidence in the trial record that supported a conclusion that defense counsel's decision was intentional and strategic. The attorney filed a motion limine seeking to bar admission of the defendant's prior convictions for armed robbery and unlawful use of a weapon by a felon, arguing that the similarity of the prior convictions to the armed robbery charge rendered the evidence unfairly prejudicial. The trial judge in fields granted defendants motion counsel's motion and asked how defense counsel quote intended to handle the armed habitual criminal charge. And counsel responded that the defense would agree to stipulate to the fact that the defendant had to qualifying prior convictions without specifying the exact nature of those convictions. The court found that that was an appropriate manner in which to handle the charge. Here, defense counsel's actions pre trial indicate that the decision not to sever was a purposeful one, and was trial strategy. Defense counsel was asked by the trial court, if he was going to include the unlawful possession of a weapon by a felon charge in the trial, and the defense counsel responded, quote, I think we would be willing to stipulate to the fact that he is a convicted felon without mentioning the underlying offense, stating later, quote, so the jury would know that he has a prior conviction that is a felony, but they would not know what it is for, unquote, the council's decision not to sever charges, but to stipulate to the felony was once again confirmed in chambers during jury selection. This is not a case where the court can find there is no evidence of a particular strategy by defense counsel not to file a motion to sever. In fields, the court identified an all or nothing approach taken by the defense attorney through his action of stipulating to the prior charges. Here to defense counsel likely believe that the odds of getting two acquittals were greater in one proceeding rather than two. Given how similar this case is to fields, defense counsel's approach here was reasonable and sound trial strategy. Also in Gapsky, the defendant claimed he received ineffective assistance of counsel, in part because counsel failed to move to sever charges, thereby allowing the jury to consider a sexual assault count, while also being aware that Gapsky was convicted of burglary. The Gapsky court ruled that trial counsel's failure to seek a severance could be viewed as a matter of trial strategy. Defense counsel may be aware that his client plans to testify on his own could be impeached with another felony conviction, thereby making the jury aware of a prior felony regardless of whether or not the two counts were severed. The Gapsky court considered that counsel may have felt or quote felt that it made sense to try for an acquittal on both counts in one proceeding, thinking that the impact of an additional conviction would not be significant, unquote. Additionally, defendants prior conviction, much like in people versus Gapsky, would have introduced, would have been introduced regardless of severance, if the defendant chose to testify on his own behalf, where the possibility of introduction already exists, it makes sense that defense counsel would only want to allow one attempt by the state to convict the defendant. Now, to skip over a couple of the facts to distinguish in the case and only really focus on people versus Williams, which opposing counsel in part relies on in people versus Williams, as the defendant noted in his brief, the court found that even if any errors were made, the defendant could not establish prejudice in light of overwhelming evidence in the case. And speaking to the prejudice elements, your honor, prejudice element to your honor, the defendant cannot establish prejudice. First, and not to be understated, nothing other than the defendant having previously, previously been convicted of a felony was shared with the jury. The defendant asserts that the mere knowledge of a prior conviction is enough for a jury to convict someone on first degree murder, yet provides no evidence to support this assertion. To satisfy the prejudice prong of the Strickland analysis, a defendant must demonstrate a reasonable probability that the outcome of the trial would have been different, or that the result of the proceeding was unreliable or fundamentally unfair. Such a reasonable probability is a probability sufficient to undermine confidence in the outcome. And there is strong evidence in this case to support the conclusion of the defendant's guilt, and to show the evidence is not closely Darren Williams, the victim in this case, was shot and killed in his Collinsville, Illinois apartment in the course of a home invasion robbery. Two men, one being the defendant, was captured on a ring doorbell breaking into the home of Woods and his girlfriend, Lauren Swearingen, who was also a victim of this crime. The two men's faces were covered, but they wore distinguishing clothing identified by Swearingen. Mr. Lennox, wasn't the defendant's fingerprint also found on the ring doorbell? Yes, Your Honor. But the first man in dark clothing and a face mask grabbed Swearingen and forced her to the ground where she was held in place by the man's body weight. The second man was wearing a white shirt and some red covering on his face, and he ran upstairs, which was later identified as a defendant. He ran upstairs, and Swearingen heard a brief scuffle as Woods came down the stairs, followed by a single pop of a gunshot going off. Swearingen saw Woods then slide down the stairs headfirst where he lay on the ground struggling to breathe. Swearingen heard movement upstairs and then heard yelling from the defendant asking where the money was. Swearingen was forced up the stairs by the man that was previously holding her down and at the top of the stairs. The man in black let go of Swearingen and the defendant pressed what Swearingen believed to be a gun at the back of her head. As she walked towards the bedroom and the laundry basket, she ultimately showed them where the $7,000 to $10,000 was, and they took marijuana as well as they left. And she was forced into the bedroom closet. Your Honors, I see that I'm running out of time. There is more evidence that I would just rest on the brief for. Thank you, Your Honors. Thank you, Mr. Lennox. Questions, Justice Welch? No questions. Justice Cates? No questions. All right. Rebuttal, Mr. Selaw? Yes, Your Honor. Thank you. Three points briefly on rebuttal. First, the state points out, and it is true, that the jury was only aware of the mere fact of the conviction and not any details. But the jury's question during deliberations asking for more detail about the unrelated prior conviction demonstrates why Edwards remains good law, even after nearly almost 50 years. We don't want the jury thinking about an unrelated prior felony conviction, if at all possible. If it has to be heard about, then sure, we only want the fact of the conviction. But in this case, Edwards says a motion to sever would have been granted specifically because it would have been too prejudicial for the jury to hear about this. So the fact that it was only the mere fact of the conviction doesn't alleviate the harm. The jury heard prior felony conviction, Mr. Lacey charged with murder. They, as cited in the opening brief, and I apologize, I don't have the exact case name on hand. But the reason we prohibit propensity evidence generally, is we don't want the jury thinking of a defendant as a bad person deserving of punishment that can't be used to push them over the goal line. Mr. Selaw, People v. Williams cites Edwards and Bracey, but they're different type cases. Those are motion to sever issues, whether or not those motions should have been granted. The issue before us is trial strategy issue, whether or not the one all or nothing strategy is appropriate. Those are different, different issues and different tests to be applied and considering those issues, aren't they? No, Your Honor, the trial strategy is whether the motion to sever would have been appropriate and whether the failure to file a motion to sever was deficient performance. So it is necessary to consider why a motion to sever is important in this case. And you can't do that without considering that the reason motions to sever are generally granted as a matter of law is because they are so prejudicial. And to that point, and to my second point, the state mentions that we can't look at trial strategy in hindsight, it has to be appropriate at the time that the decision was made. And in support of that, they cite to both Fields and Gapsky. But as I noted in, pardon me, as Mr. Lacey noted in the reply brief, and I noted my initial time, and I'll do so again here today, Fields and Gapsky are distinguishable. First, Fields says that generally a motion to sever in cases like this will be granted. And it says that specifically because of the prejudice that will come specifically, quoting from the opinion, the trial court granted the motion to sever, quote, stating that while Fields' testimony could reopen the issue, the judge could not envision a fair trial if the prior convictions were ruled admissible. And so Fields actually supports our point. And Gapsky is only appropriate to say that motion to sever is not, is a matter of trial strategy, but only if that's incumbent on it being clear that the defendant will testify because if the defendant is going to testify, then that prior conviction can come in anyways under Montgomery. Here there is no evidence, and the state points to none, that Mr. Lacey was ever going to testify. How about Cooper v. Johnson, 213 L.F. 2nd, 110535, paragraphs 44 and 54. Doesn't that also say that request to sever is generally a matter of trial strategy? Yes, Your Honor, but trial strategy has to be sound. And in this case, there was no sound trial strategy. The state argues that, you know, he was just trying to get it all done in one case. But again, there's no evidence to suggest that that was necessary or even a sound strategy in this case, because it allowed that unduly prejudicial information to come in. Edwards, as I mentioned up top, Edwards has been good law for nearly 50 years now. There's no argument that a competent defense attorney is not aware of this. And the reason because of that is because we don't want the jury unduly prejudiced by the idea of once a criminal, always a criminal. To that end, and as my final point, the state argues that the evidence was clear in this case, but the evidence was far from clear. It says it was clear that Mr. Lacey was on the ring camera video, but then it backtracks and qualifies that by saying, well, he was identified by the clothing, right? Because whoever broke into this house was in dark clothing, had COVID masks on, the only thing that you could really see was their eyes and their hands. And so it's not obvious that Mr. Lacey was the person involved in the break in. And Justice Vaughn, you asked about the fingerprint, but the jury's question, along with that first question saying there are 10 to two deadlocks said the fingerprint evidence was not enough. So then we have to ask what pushed them over the edge? Well, they wanted more information about this specific felony. And then when they told they weren't going to get any further information, then they broke the deadlock. I see my time is up. But if you're parents have any questions, I'd be happy to answer them. Justice Welch? No questions. Justice Cates? No questions. Right. Thank you. We will take the matter under advisement and issue a decision in due course.